UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**UNITED STATES OF AMERICA**,

v.

**THOMAS JENKINS**,

Defendant.

Case No. 17-cr-00233 (TNM)

---

## MEMORANDUM ORDER

Thomas Jenkins is serving a 128-month prison sentence for conspiracy to distribute heroin and methamphetamine. He is incarcerated at Federal Correctional Institute (FCI) Hazelton. Jenkins seeks compassionate release under 18 U.S.C. § 3582(c), claiming that his family circumstances and the conditions of his confinement are extraordinary and compelling. Upon consideration of Jenkins's filings, the relevant law, and the entire record of the case, the Court denies his motion.

### I.

FBI agents wiretapped Jenkins's phone and learned that he was part of a narcotics distribution conspiracy. Rev. Fin. Presentence Invest. Rep. (PSR) at 6, Docket No. 18-cr-235, ECF No. 16.[1] Jenkins was responsible for between 100 and 400 grams of heroin, and 200 grams of methamphetamine. *Id.* at 7. In 2017, a grand jury returned a one-count indictment charging Jenkins and his confederates with conspiracy to distribute and possess with intent to distribute cocaine base, phencyclidine, methamphetamine, and heroin. *See* Indictment at 1, Docket No. 17-cr-233, ECF No. 61. Jenkins eventually pled guilty to conspiracy to distribute and possess with

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system. As this citation indicates, Jenkins pled guilty on a different docket, No. 18-cr-235. But because Jenkins made his motion on this docket, No. 17-cr-233, the Court enters its Order here as well.

intent to distribute 100 grams or more of heroin and 50 grams or more of methamphetamine. *See* Judgment at 1, Docket No. 18-cr-235, ECF No. 18. That crime carries a mandatory minimum prison sentence of ten years. *See* 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 846. The Court ultimately sentenced Jenkins to 128 months in prison. Judgment at 2. He has served less than half of that sentence.

Jenkins now moves *pro se* for compassionate release under 18 U.S.C. § 3582(c). *See* Pro Se Mot. for Compassionate Rel. (Def.'s Mot.), Docket No. 17-cr-233, ECF No. 138. He asks to be "plac[ed] on house arrest for the remaining portion of his sentence" and be "permitt[ed] to travel to work and assist his wife with her medical appointments." *Id.* at 5.

## II.

"A defendant seeking release under § 3582(c)(1))(A)(i) has a steep hill to climb." *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C. 2020). Sentence reduction is appropriate only if the defendant has first exhausted available administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). If all administrative remedies have been exhausted, a court may reduce a term of imprisonment if the defendant shows that "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i). But any such reduction must be "consistent[] with the sentencing requirements of section 3553(a)." *United States v. Jackson*, 26 F.4th 994, 1001 (D.C. Cir. 2022).

Section 3553(a) in turn requires consideration of, among other things, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need "to protect the public from further crimes." § 3553(a)(1)–(2). Courts thus "consider the anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations." *United States v. Long*, 997 F.3d 342, 356 (D.C. Cir.

2021).  A defendant seeking compassionate release "has the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)(i)."  *Holroyd*, 464 F. Supp. 3d at 17.

**III.**

Jenkins claims to have exhausted his administrative remedies under § 3582(c)(1)(A), Def.'s Mot. at 2, and the Government does not contend otherwise.  The only issues for the Court are whether extraordinary and compelling circumstances warrant a reduction in Jenkins's sentence, and whether a reduction is appropriate under § 3553(a).

**A.**

Jenkins argues he should be released because his wife has several medical conditions leaving her unable to care for their children and in need of Jenkins's assistance.  *See* Def.'s Mot. at 4; Def.'s Supp. Br. 2, ECF No. 144.  Jenkins says his wife suffers from kidney failure, fibromyalgia, and lupus nephritis, and that her medications prevent her from receiving the COVID-19 vaccine.  *Id.*  And because his wife is unvaccinated, her comorbidities make it likely that she would suffer serious adverse consequences if she contracts COVID-19, making it difficult for her to venture out of the house and supervise their children, who have "begun to notice the nefariousness . . . of the world."  *Id.* at 5.  Jenkins also asserts that the conditions at FCI Hazelton are bad enough to warrant release.

The Court finds that these circumstances do not constitute an extraordinary and compelling reason to reduce Jenkins's sentence.  First, Jenkins does not satisfy his burden to establish that his wife's conditions justify his relief.  Jenkins contends that his wife cannot receive a COVID-19 vaccine because of her medications, but he provides no evidentiary support for that proposition.  Nothing in the proffered medical records suggests that her conditions or medications make her ineligible for a vaccine.

3

But even assuming Jenkins's wife cannot receive a COVID-19 vaccine, on these facts her illness is not an "extraordinary and compelling" circumstance under § 3582(c)(1)(A)(i). The comments to the Sentencing Commission's Policy Statement, U.S.S.G. § 1B1.13, state that in reducing a sentence the court may consider the defendant's "Family Circumstances," that is, whether there is "incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse." *Id.* § 1B1.13 cmt. 1(c)(i)–(ii). Although the D.C. Circuit has held that § 1B1.13 "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act," *Long*, 997 F.3d at 355, courts still view the Policy Statement as a "useful guidepost," *United States v. Shabazz*, No. 17-43, 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021). And "family circumstances should warrant release only in extreme circumstances." *United States v. Speaks*, No. 18-cr-111-1, 2021 WL 3128871, at *4 (D.D.C. July 23, 2021) (quoting *United States v. Piles*, No. 19-cr-292-5, 2021 WL 1198019, at *2 (D.D.C. Mar. 30, 2021)).

The Court does not mean to take Jenkins's wife's conditions lightly or suggest that they are not serious. But her medical records do not show that she is "incapacitated." As the Government notes, Mem. in Opp'n at 1, Docket No. 17-cr-00233, ECF No. 139, Jenkins's wife's most recent medical notes are from February 23, 2021, during the height of the pandemic, reflecting that she has been able to obtain medical care without Jenkins's help. *See* Def.'s Mot. at 22. Indeed, those notes say she was "doing fine." *Id.* So even accepting the seriousness of his wife's conditions, Jenkins's assertion that he should be released so that he may "assist his wife with her medical appointments" holds little weight.

Further, while commendable, Jenkins's desire to help his wife raise their two daughters is not extraordinary and compelling. *Id.* Jenkins admits that his wife can "have her food delivered," and he fails to show with any specificity that she is unable to sufficiently supervise their children. *Id.* at 5. Jenkins's worry that, without his oversight, his 13-year-old daughter "may travel down a dark road" is simply not extraordinary and compelling. And even assuming Jenkins's wife is incapacitated, Jenkins provides no evidence that he is "the only available caregiver" of his children. *Speaks*, 2021 WL 3128871, at *4 ("[D]eath or incapacitation of a defendant's domestic partner who is the primary caretaker of the defendant's minor children" might be an extraordinary circumstance, "but only where the defendant would be the only available caregiver." (cleaned up)). To the contrary, it appears Jenkins's wife has family in the District that can help care for their children. *See* PSR at 26.

The increased burden placed on the spouses of inmates to care for their children, while unfortunate, is an incident of incarceration from which many inmates and their families suffer. *See United States v. Garcia*, No. 09-224-01, 2021 WL 719763, at *5 (E.D. Pa. Feb. 23, 2021). By definition, then, it is not an extraordinary and compelling circumstance. Rather, it is an almost inevitable consequence of a defendant's decision to engage in felonious activity. And the heightened burden on families and potentially serious health risks brought about by COVID-19, again, is something people both inside and outside prison must deal with. *See United States v. Daniel*, No. 1:17-CR-233, 2021 WL 5416629, at *3 (D.D.C. Nov. 18, 2021).

The Court also rejects Jenkins's bare assertion that the conditions at FCI Hazelton are extraordinary and compelling. *See* Def.'s Mot. at 6. He says that the prison has been "under some sort of onerous lockdown . . . and is currently not running normal" due to COVID-19. *Id.* He also mentions in supplemental briefing that the new COVID-19 variant, BA.2, poses a novel

5

threat.  *See* Def.'s Supp. Br. 2 ("With the newest COVID-19 subvariant becoming the most dominant strand in America—it has proven to be 40-60% more contagious than the previous viral Omicron variant.").  But "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Dempsey*, No. 1:19-cr-368, 2021 WL 2073350, at *3 (D.D.C. May 24, 2021) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  This is especially true at FCI Hazelton—even as the more-contagious BA.2 has emerged, the facility has zero active COVID cases among inmates *or* staff.  *See* BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last visited April 18, 2020).  Thus, the Court finds the conditions at the prison are not sufficiently "extraordinary and compelling" to justify Jenkins's early release.

## B.

Even if Jenkins "*had* presented 'extraordinary and compelling reasons' for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release."  *Daniel*, 2021 WL 5416629, at *3 (quoting *Dempsey*, 2021 WL 2073350, at *4); *see also United States v. Jackson*, 468 F. Supp. 3d 59, 69 (D.D.C. 2020) (explaining § 3553(a) factors may alone justify denial of compassionate release), *aff'd*, 26 F.4th 994 (D.C. Cir. 2022).

The nature and circumstances of Jenkins's offense weigh against his release.  Jenkins was part of a large conspiracy to distribute copious amounts of heroin and methamphetamine.  PSR at 7.  And he was no bit player—he was a leader and organizer in the conspiracy, responsible for 200 grams of methamphetamine and between 100 grams and 400 grams of heroin.  *Id.* at 7, 9.  There is a reason that the crime to which he pled guilty carries a mandatory minimum of ten years in prison.  "The country 'is in the middle of an opioid epidemic,' and those who deal

heroin either directly or indirectly contribute to the problem." *Daniel*, 2021 WL 5416629, at *3. Jenkins has served less than half of his 128-month sentence. Nothing about the nature and circumstances of his crime suggest that he should be released on house arrest.

More, both Jenkins's history and characteristics and the need to protect the public from further crimes also weigh against release. He has many drug convictions, the first when he was 19 years old. PSR at 12–17. Jenkins was over 40 years old when he was arrested for his current offense. Multiple convictions related to narcotics distribution spanning more than 20 years undermine any confidence the Court could harbor that if Jenkins is released he will not revert to dealing drugs. He also has convictions for robbery, simple assault, and sexual solicitation. PSR at 13–16. The Court acknowledges Jenkins's statement that, if released, he will obtain gainful employment, care for his family, and not "get caught-up" in crime, Def.'s Mot. at 7. It appears Jenkins is genuinely remorseful for his conduct and intends to direct his energy towards productive, lawful behavior. But Jenkins's record shows he has recidivated before; there is thus still a need to protect the public against his potential future criminality.

In sum, altering Jenkins's sentence so that he would serve less than half of it in prison "would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence." *Speaks*, 2021 WL 3128871, at *4 (quoting *Holroyd*, 464 F. Supp. 3d at 21). Thus, on balance, the § 3553(a) factors strongly favor denying Jenkins's motion.[2]

---

[2] Jenkins also asks the Court to appoint counsel to aid him in litigating this motion. *See* Def.'s Supp. Br. 1–2. Because the balance of the § 3553(a) factors weighs so heavily against modification of Jenkins's sentence, counsel could not sway the outcome here. Thus, the motion to appoint counsel is denied.

For the foregoing reasons, it is

**ORDERED** that Defendant's [601] Motion for Compassionate Release is DENIED.

**SO ORDERED**.

This is a final, appealable Order.

Dated: April 18, 2022                                        TREVOR N. McFADDEN, U.S.D.J.